OPINION OF THE COURT
Louis R. Rosenthal, J.
Defendant moves to suppress all information and evidence obtained pursuant to the search warrant on the grounds that there was no probable cause to issue said warrant. In addition, defendant alleges a violation of CPL 690.50 (subd 5) in that the warrant was not returned without unnecessary delay. In order for the People to proffer evidence or testimony gathered pursuant to a warrant, the evidence must be physically seized if possible. The motion to suppress testimony of what the executing officer observed pursuant to the search warrant is granted because the items sought and enumerated in the *288 warrant were not seized even though the police officer now alleges the items were on the premises.
The facts of this case are as follows: On December 5, 1979 at about 3:00 p.m., Detective Upton of the auto squad made an inspection of the vehicle dismantler records at the property of Hamilton Auto Salvage Corp. at 641 Third Avenue, Brooklyn, New York. Detective Upton, in his affidavit, stated that he observed major component parts of motor vehicles post-1973 that were not listed in defendant’s dismantler registry as required by subdivision 5 of section 415-a of the Vehicle and Traffic Law. The detective then left 641 Third Avenue without taking further police action. At 4:30 p.m., the detective observed an enclosed yard at 141 19th Street, Brooklyn, New York, a very short distance from 641 Third Avenue. There the detective, as stated in his affidavit, observed other post-1973 auto parts not listed in the defendant’s dismantler registry at 641 Third Avenue. The detective also observed a stake truck in the yard which was later discovered to belong to Hamilton Auto Salvage. The detective then observed the defendant’s brother drive a flatbed truck bearing the name of Hamilton Auto Salvage, 641 Third Avenue, Brooklyn, New York, to the front of the 141 19th Street yard. The gates of the 141 19th Street yard were unlocked and defendant’s brother and a helper loaded a post-1973 major component part (1974 Lincoln, white nose) onto the flatbed truck. The truck pulled out of the yard and was driven to 641 Third Avenue, Hamilton Auto Salvage. The defendant was then observed climbing on board the truck at which time he began to fasten the 1974 Lincoln nose to the truck. Surveillance was then discontinued.
Based on Detective Upton’s observations as stated in his affidavit a search warrant was issued on December 6, 1979 for the premises at 641 Third Avenue, Brooklyn, New York, and the enclosed yard at, adjacent to, and below 141 19th Street, Brooklyn, New York, occupied by Hamilton Auto Salvage Corp. The search was authorized in order to seize post-1973 auto parts, the vehicle dismantler registry and invoices for motor vehicle parts. Detective Upton executed the search warrant. The warrant was returned on January 3, 1980. Detective Upton made no seizure of any items mentioned in the warrant. The return on the warrant stated that no property was seized. Yet the People sought to have Detective Upton testify as to what items he observed that were listed in *289 the complaint and were found on but not seized from the property searched.
There is a genuine issue of whether there was probable cause to search the yard at 141 19th Street. However assuming that probable cause did exist to search both premises — 641 Third Avenue and the 141 19th Street yard — the remaining pivotal issue is seemingly one of first impression: Can a police officer testify as to what items he has observed when legally on the premises pursuant to a valid search warrant, when that officer did not seize any of these items that he was authorized and ordered to return to the court?
There are two sections of the Criminal Procedure Law that are pertinent to this issue: CPL 690.45 (subd 7) and CPL 690.50 (subd 5). CPL 690.45 (subd 7) mandates that search warrants contain "A direction that the warrant and any property seized pursuant thereto be returned and delivered to the court without unnecessary delay.” CPL 690.50 (subd 5) requires that "Upon seizing property pursuant to a search warrant, a police officer must without unnecessary delay return to the court the warrant and the property, and must file therewith a written inventory of such property, subscribed and sworn to by such officer.”
The defendant maintains that the more than three-week period from the date of the execution of the warrant, December 10, 1979, to the date of the warrant’s return, January 3, 1980, constituted "unnecessary delay”, and that all information obtained pursuant to the warrant should be suppressed. "Despite the use of the word 'must’ in this statute (CPL 690.50, subd 5), the prevailing rule in this State would indicate that this paragraph is to be considered merely ministerial when considering the validity of the search warrant as a whole, and errors in carrying out such ministerial duties by the police should not be used to invalidate an otherwise valid warrant.” (People v Galleges, 80 Misc 2d 265, 271.) "A police officer has a duty to comply with the provisions of CPL 690.50, including the provision requiring him to write, subscribe and give a receipt itemizing the property taken by him (subd. 4) and to file with the court a written inventory of the property seized (subd. 5); but his failure to properly comply with these ministerial duties will not invalidate a valid search.” (People v Jenkins, 71 Misc 2d 938, 939.) The return of a search warrant is a ministerial act and failure to do so is not fatal. (People v Rose, 52 Misc 2d 648.) The Federal courts are in accord with *290 the New York rule. (United States v Moore, 452 F2d 569; United States v Wilson, 451 F2d 209; United States v Baldwin, 46 FRD 63.) The facts in the present case do not involve the failure of an officer to file a return of the search warrant or a failure of the Judge to write on the face of the warrant that the warrant " 'be returned and delivered to the court without unnecessary delay’ ”. (People v Pietramala, 84 Misc 2d 496, 499.) The facts here indicate that the police officer filed a return, but that he failed to seize property listed on the search warrant. The return stated "no property seized.” The issue then becomes a narrow one: Is such a failure to seize property listed on a search warrant simply a ministerial defect or is it a substantial deviation from CPL 690.45 (subd 7) and CPL 690.50 (subd 5) requiring suppression of the police officer’s testimony as to his observations during the search?
In People v Jenkins (supra, p 939), in summarizing the Federal cases and the Rose case (supra) regarding suppression of evidence and failure to comply with ministerial duties, the court found the following: "In this court’s considered judgment and in the light of the Rose case, and the Federal authorities cited therein, while scrupulous observance of legal requirements with respect to search warrants is required, a less than punctilious compliance should not operate to void a valid search where the derelictions occur after the execution of the warrant and are ministerial in nature” (emphasis added). All the cases previously cited which found the defect to be ministerial in nature dealt with the return or filing of the warrant after the warrant was executed. The defect in this case is a fatal one because the error occurred during the warrant’s execution. The property listed pursuant to the warrant was not seized and therefore not returned or filed at all. No claim was made by the People of exigent circumstances requiring the testimony of the detective in lieu of the property that was sought to be seized. In fact, the People concede that the property listed on the warrant is the subject matter of the detective’s testimony and was available to be seized by Detective Upton. This failure to seize the property particularized in the search warrant obtained by this detective was not merely a ministerial defect but as a matter of law a substantial deviation from the requirement of CPL 690.50 (subd 5) as it effects the very essence of the warrant involved. In People v Washington (75 Misc 2d 1005) the return and inventory were lost as well as the original copy of the war *291 rant. The evidence was suppressed. Moreover, "[a]s to what is to be taken, nothing is left to the discretion of the officer executing the warrant.” (Marron v United States, 275 US 192, 196.)
The detective’s noncompliance with CPL 690.50 (subd 5) was not simply ministerial, but was a substantial deviation from the statute. Accordingly, all information obtained by the People during the execution of the warrant is suppressed including any observations of Detective Upton.